IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

EVELYN BOWYER,                                )
                                              )
    Plaintiff,                                )
                                              )
                                              )   Cause No.:
                                              )
                                              )
v.                                            )   Division No.:
                                              )
US AIRWAYS, INC.,                             )   JURY TRIAL DEMANDED
                                              )
Serve at                                      )
Registered Agent                              )
CT Corporation System                         )
120 South Central Avenue                      )
Clayton, MO 63105                             )
                                              )
AND                                           )
                                              )
PAMELA ABRAHAM HERNANDEZ,                     )
in her official and individual capacity,      )
                                              )
Serve at:                                     )
Registered Agent                              )
CT Corporation System                         )
120 South Central Avenue                      )
Clayton, MO 63105                             )
                                              )
PAUL LUND, in his official and                )
individual capacity,                          )
                                              )
Serve at:                                     )
Denver International Airport                  )
8500 Peña Boulevard                           )
Denver, Colorado 80249-6340                   )
                                              )
                                              )
                                              ).
                                              )
    Defendants.                               )

## PETITION

COMES NOW Plaintiff, Evelyn Bowyer, by and through counsel, and for her

1

Petition against Defendants US Airways, Inc. ("US Airways"), Pamela Abraham Hernandez ("Hernandez"), and Paul Lund ("Lund"), states as follows.

## PARTIES AND JURISDICTION

1. At all times relevant hereto, Plaintiff is and was a United States Citizen, over the age of eighteen (18), residing in St. Louis County, State of Missouri. Plaintiff is African-American.

2. At all times relevant hereto, Defendant US Airways is and was a foreign corporation, doing business in the State of Missouri.

3. At all times relevant hereto, Defendant Hernandez is and was employed by US Airways in its Human Resources Department. Hernandez is being sued in her official and individual capacity.

4. At all times relevant hereto, Defendant Lund was employed by US Airways as a supervisor at the US Airways located in Lambert Airport, St. Louis County, State of Missouri. Upon information and belief, Lund resides in Denver, Colorado. Lund is being sued in his official and individual capacity.

5. Jurisdiction in this court is proper pursuant to Mo.Rev.Stat. §213.070 and Mo.Rev.Stat. §213.111, as the unlawful discriminatory practices of Defendants took place in St. Louis County, State of Missouri.

6. Venue in this court is proper in that the acts and occurrences giving rise to Plaintiff's cause of action occurred in St. Louis County, State of Missouri.

7. At all times relevant hereto, US Airways was acting through its designated

2

supervisory agents, officers, employees and representatives, who were acting within the scope and course of their employment and authority with full knowledge that Plaintiff's well established statutory rights were being violated by its employees.

8. Plaintiff timely filed a Charge of Discrimination with the Missouri Commission on Human Rights alleging racial discrimination, disability discrimination, and retaliation for reporting racial and disability discrimination, and the Missouri Commission on Human Rights issued her a Right to Sue Letter. (See attached Exhibit 1, which is hereby incorporated fully by reference, as if fully set forth herein).

## COMMON FACTUAL ALLEGATIONS

9. Plaintiff does hereby incorporate by reference Paragraphs 1-8, as if fully set forth herein.

10. Plaintiff was formerly employed by US Airways located in the St. Louis International Lambert Airport, as a Customer Service Agent.

11. As part of Plaintiff's job duties, she was required to work at gate C24 in the airport. Beginning in January of 2013, Plaintiff began to suffer from a serious medical condition as a result of the allergens and dust in the air at the gate as well as mold and rats, and noxious gas fumes from the air cart which had a leak.

12. At the time Plaintiff began experiencing these health problems in January of 2013, she began making complaints to her supervisor, Kevin Stacey, about the strong odor of gas fumes coming from the air cart at gate C24, as well as about the fiberglass near gate C24 which appeared black with filth.

3

13. Plaintiff continued to experience symptoms of chest pains and difficulty breathing each time she worked at gate C24, and on March 29, 2013, she contacted her supervisor, Lund, and informed him that she could not come into work because she was having difficulty breathing.

14. Lund told Plaintiff to stay home and informed her that he would be sending her Family Medical Leave Act ("FMLA") paperwork to fill out.

15. On April 1, 2013, Plaintiff was admitted to the hospital, where she was held for seven (7) days.

16. Plaintiff returned to work after her hospitalization on April 26, 2013 and was informed by Lund that she would only be assigned to the ticket counter, and not gate C24, per the instructions of Plaintiff's physician.

17. On May 26, 2013, Plaintiff was, for the first time since her hospitalization, assigned to gate C24.

18. While working at gate C24 on May 26, 2013, Plaintiff again began suffering from chest pains and difficulty breathing. Plaintiff finished her shift and went on vacation for approximately one (1) week.

19. While Plaintiff was on vacation, she filed an internal complaint with the US Airways Ethics Commission regarding three (3) female employees who began harassing her regarding her inability to return to work at the gate because of her medical condition.

20. Specifically, Plaintiff reported that these three (3) females stated to her that she should not receive "special privileges" because of her medical condition and that Plaintiff should be forced to return to work at the gate.

21. When Plaintiff returned to work after her vacation on June 12, 2013, she asked Lund, her supervisor, what had been done regarding her complaint against the three (3) female employees.

22. Lund denied knowing of Plaintiff's complaint. To date, Plaintiff has not been informed of the status of her complaint, and while employed with US Airways, continued to work on a frequent basis with those against whom she had made the complaint.

23. On June 15, 2013, while assigned to the ticket counter, a US Airways belt that is used by American Airlines and which shoots up dust when operated, began to cause Plaintiff difficulty breathing.

24. On June 18, 2013, Plaintiff was hospitalized again, this time in the intensive care unit. On June 20, 2013, while in the hospital, Lund faxed Plaintiff forms to be filled out to request a reasonable accommodation for her medical condition.

25. Plaintiff had the forms filled out by two (2) of her physicians, and they were immediately forwarded to US Airways. The completed reasonable accommodation forms indicated that Plaintiff's physicians did not want her to work at the gate, and requested that she be permitted to work only at the ticket counter, until such time as the Airport and/or US Airways took care of the mold, rats, allergens, and environmental dust at the gate.

26. When Plaintiff returned to work on June 26, 2013, she was informed by one of her supervisors, Terry Hord, that she was being assigned to the gate.

27. Plaintiff informed him she could not work at the gate, per her physician's orders and her request for reasonable accommodation. Mr. Hord told Plaintiff that he was just following orders and that Plaintiff was to be assigned to the gate.

28. Plaintiff refused to go to the gate because of her serious medical condition, and proceeded to clock out and go home. On the same date as Plaintiff was ordered to go to the gate,

there was an additional US Airways employee present and on duty who could have filled in for Plaintiff at the gate, while Plaintiff worked the ticket counter.

29. On or about June 27, 2013, Plaintiff was instructed to call Hernandez regarding the filing of Plaintiff's request for reasonable accommodation. Hernandez told Plaintiff that just because Plaintiff had provided the request for reasonable accommodation paperwork, that did not mean that she would be approving Plaintiff's request.

30. Hernandez also asked Plaintiff what her disability was, and whether Plaintiff understood what a disability was. Hernandez then made the following analogy, "If you all of the sudden could not read, we would accommodate you." During this conversation, Hernandez told Plaintiff she did not understand what her disability was and made deragotory remarks regarding Plaintiff's intelligence. Hernandez also told Plaintiff that if she was needed to work at the gate, Plaintiff would work at the gate.

31. On or about July 2, 2013, Plaintiff filed her Charge of Discrimination with the MCHR, alleging Lund, Hernandez, and US Airways had discriminated against Plaintiff based on her race, her perceived and/or actual disability, and in retaliation for making complaints regarding these issues, and requesting reasonable accommodation.

32. Shortly after the filing of Plaintiff's Charge of Discrimination on July 2, 2013, Plaintiff began being retaliated against further by US Airways, by and through Lund.

33. Specifically, Plaintiff requested a specific week for vacation, but was told by Lund that there were two (2) other individuals on vacation the same week, and that he did not want three (3) people on vacation during that week. However, Lund had previously allowed three (3) individuals to be off on vacation at once, most recently the week of July 4, 2013.

6

34. Plaintiff complained to Lund that she believed his decision to deny her request for vacation was discriminatory and was taken against her in retaliation for her filing of a Charge of Discrimination. In response, Lund stated, "how am I supposed to act after you filed a Charge against me?"

35. After Plaintiff filed her Charge, Lund repeatedly stated to her, "what are you going to do if I have to send you the gate, because you know that could happen.".

36. On July 27, 2013, Plaintiff was injured while at work. Plaintiff was not seen by a US Airways' physician until almost two (2) days after this injury.

37. As a result of the on duty injury she sustained, Plaintiff was given restrictions by US Airways' physician, which were ignored by US Airways. However, a Caucasian employee who was not injured on the job had recently brought in a physician's note with restrictions, which were followed diligently by US Airways.

38. On July 30, 2013, Plaintiff applied for a medical leave of absence due to the breathing difficulties she was suffering every time she went to work. Plaintiff's physician filled out the paperwork stating that in addition to Plaintiff's breathing difficulties, she needed to be placed on leave for anxiety and stress which was ongoing, as a result of the hostile work environment at US Airways.

39. On or about August 27, 2013, Plaintiff filed another internal complaint with US Airways Human Resources Department regarding the ongoing harassment, discrimination, and retaliation she was being subjected to. Plaintiff has never been provided with any information by US Airways regarding its investigation, if any, into her complaint..

40. On or about September 18, 2013 Plaintiff received correspondence from US Airways which stated that her previous request for a medical leave of absence had been denied,

7

even though it had previously been granted. Plaintiff immediately contacted human resources, and was told they would look into the reasons why her leave was denied. Plaintiff was contacted by a human resources representative on or about September 20, 2013, and was informed that her request for a leave of absence had been approved.

41. On or about September 26, 2013, Plaintiff's physician sent documentation to US Airways stating that she needed to be on an additional six (6) weeks of leave due to continued stress and anxiety, and allergy/immunology issues.

42. On or about September 26, 2013, Plaintiff was sent a letter by US Airways that stated, in summary, that Plaintiff would be required, upon her return to work, to work at the gate if assigned, and that her request for reasonable accommodation had already been met and no further accommodations would be forthcoming. Plaintiff was informed after receiving the letter that her request for an additional six (6) weeks of leave was approved.

43. Plaintiff again requested a reasonable accommodation from US Airways on November 8, 2013. Plaintiff's physician indicated in the reasonable accommodation form which was provided to US Airways, that Plaintiff could not work at the gate, and needed to be assigned a position which did not include working at the gate.

44. Plaintiff returned to work on November 11, 2013. Plaintiff was required, due to the length of her leave of absence, to obtain a new SIDA badge, which allows her to work at the ticket counter. US Airways and Lund have made it extremely difficult for Plaintiff to obtain this certification, by failing to schedule her for the required class, despite her repeated requests that they do so.

45. On or about December 9, 2013, Plaintiff was scheduled for a physical therapy appointment related to her on duty work injury. Plaintiff had previously informed Lund that she

8

was scheduled for this appointment and would not be at work. On or about December 11, 2013, Plaintiff requested vacation time for the December 9, 2013 appointment. Lund informed Plaintiff that because she did not come to work on December 9, 2013, she was a "no call/no show", and would receive a point against her attendance record.

46. On January 10, 2014, Lund posted a new bid schedule. The bid schedule as it applied to the full time bids, made it impossible for Plaintiff to bid a line that did not include working at the gate. On or about February 4, 2014, Plaintiff was released from treatment regarding her on duty work injury, with permanent restrictions.

47. At or near that time, Plaintiff again requested a reasonable accommodation from US Airways, based upon the permanent restrictions she had been given by her physician. In the months following, Plaintiff attempted to engage US Airways in the interactive process, with the goal being to receive a reasonable accommodation from US Airways.

48. During this process, Plaintiff was first told by US Airways that there was no airport in the United States which had a position to fit her physical restrictions. Later, Plaintiff was told there was a position available, but it was out of state.

49. In early April, 2014, Plaintiff received a call from US Airways, requesting that she return her parking pass, keys, and other US Airways property, including her US Airways badge. When this request was made, Plaintiff agreed to comply, but asked that she first be provided with a termination letter. Plaintiff was informed that the Legal Department would be providing her with a termination letter.

50. Shortly thereafter, Plaintiff spoke to human resources representative Tonya Bell, who informed Plaintiff that there was a position at the ticket counter with US Airways in Washington D.C., which could accommodate Plaintiff's restrictions. Plaintiff reminded Ms. Bell

9

that even though the Washington D.C. location did not currently require its agents working the ticket counter to lift baggage, this had also previously been the case in St. Louis. Ms. Bell was unable to provide Plaintiff with any assurance that the D.C. location would not, in the future, require its agents, including Plaintiff, to lift baggage.

51. Shortly after this conversation, Plaintiff was officially notified that she was not being terminated from US Airways.

52. On Friday, May 9, 2014, Plaintiff was informed by US Airways that she must make a decision immediately as to whether or not she would accept the Washington D.C. position. US Airways continued to state that there were no other position in any of its numerous locations across the United States, which would fit Plaintiff's restrictions.

53. Plaintiff informed US Airways that Washington D.C. has a significantly higher cost of living than St. Louis, and such a relocation would require her to expend substantial financial resources for the cost of moving, and that she did not believe that US Airways was providing her with a reasonable accommodation by offering her this position.

54. In early June of 2014, a ticket counter position was posted for the airport in Indiana. Plaintiff asked Tonya Bell to check into that position to see if it would fit Plaintiff's physical restrictions. Ms. Bell assured Plaintiff she would do so. However, on June 18, 2014, Ms. Bell sent correspondence to Plaintiff stating that the only available position that had been discussed between the two (2) of them was an open CAR position at the Washington DC airport.

55. On June 18, 2014, Ms. Bell stated in an email to Plaintiff that she was refusing to correspond with Plaintiff any further regarding her request for reasonable accommodations, by way of email communication. Ms. Bell insisted, "I am not having any more email conversations with you. If you want to talk to me you can call me live. . ."

10

56. Ms. Bell's actions and/or inactions during this process caused Plaintiff to suffer extreme emotional distress which has placed her mental and physical health in jeopardy. US Airways continued, since February of 2014 to essentially ignore Plaintiff's request for a reasonable accommodation, and continued to insist that there was only one accommodation it could make for Plaintiff, which included assigning her to an airport which is across the country.

57. Plaintiff's employment with US Airways was in limbo beginning on February 4, 2014, which took a toll on her both financially, mentally, and physically.

58. Due to the severe and pervasive hostile work environment and retaliation she was subjected to, as well as US Airways refusal to engage in the interactive process in order to provide Plaintiff with a reasonable accommodation, Plaintiff was forced to resign.

59. Plaintiff alleges her employment was constructively discharged by US Airways as of June 18, 2014, when she was forced to resign.

60. Plaintiff also alleges that during her employment with US Airways, similarly situated Caucasian employees were treated more favorably than her. Specifically, when Plaintiff became a full time employee in March of 2013, she was told that she could not keep her days off because of seniority. However, a white female recently went full time and Lund allowed her to keep her off days.

61. White employees of US Airways are treated better than African-American employees with regard to use of voluntary trade time off. Further, another African-American employee who forgot her badge had to clock out, go home and retrieve it, while a white employee who forgot her badge was permitted to continue working without it.

## COUNT I-DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

62. Plaintiff does hereby incorporate by reference each and every allegation contained

11

in Paragraphs 1-61, as if fully set forth herein.

63. Plaintiff, who is an African-American, is within a class protected from discrimination by the Missouri Human Rights Act.

64. All aforementioned actions against Plaintiff, by order or under the authority of US Airways, herein mentioned, qualify as adverse employment actions taken in violation of the MHRA. The aforementioned adverse employment actions taken against Plaintiff were part of a pattern, practice, and policy of US Airways, Hernandez, and Lund.

65. Defendants' conduct was initiated intentionally, knowingly, maliciously, in willful and wanton disregard and reckless indifference to Plaintiff's rights in violation of the MHRA.

66. As a direct result of Defendants' unlawful acts, as aforesaid, in violation of the MHRA, Plaintiff has lost wages, benefits, and suffered severe and debilitating emotional distress, including physical manifestations of stress.

67. Plaintiff's race was a contributing factor in Defendants' decision to take the aforementioned adverse employment actions.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in her favor, above the $25,000.00 jurisdictional requirement of this Court, against Defendants US Airways, Hernandez, in her official and individual capacity, and Lund, in his official and individual capacity, as follows:

1. Award Plaintiff actual damages including back-pay and compensatory damages for Defendants' violations of the Missouri Human Rights Act, including an amount equal to her lost wages and other benefits of employment, with interest, and any other expenses incurred as a result of her loss of these benefits.

2. Award Plaintiff damages for emotional distress;

3. Award Plaintiff punitive damages, up to and including $1,000,000.00, for Defendants' intentional and malicious violation of Plaintiff's rights;

4. Award Plaintiff reasonable attorney's fees and costs incurred herein;

5. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

## COUNT II
## RETALIATION FOR REPORTING RACIAL DISCRIMINATION

68. Plaintiff does hereby incorporate by reference each and every allegation contained in Paragraphs 1-67 as if fully set forth herein.

69. All of the aforementioned actions taken against Plaintiff constitute adverse employment actions in violation of the Missouri Human Rights Act, and were taken against Plaintiff in retaliation for her reporting of racial discrimination, which is a protected activity under the Missouri Human Rights Act.

70. The aforementioned adverse employment actions taken against Plaintiff, were of a continuing nature, and were taken in retaliation for her reporting acts of racial discrimination.

71. The actual and contributing factor in the Defendants' decisions to take the aforementioned adverse employment actions against Plaintiff, was in retaliation for Plaintiff's reporting acts of racial discrimination.

72. The aforementioned employment actions taken by Defendants against Plaintiff, were initiated intentionally, knowingly, maliciously, and in willful and wanton disregard and reckless indifference to Plaintiff's rights all in violation of the Missouri Human Rights Act.

73. As a direct result of Defendants' unlawful acts, as aforesaid, in violation of the

MHRA, Plaintiff has lost wages, benefits, and suffered severe and debilitating emotional distress, including physical manifestations of stress.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in her favor, above the $25,000.00 jurisdictional requirement of this Court, against Defendants US Airways, Hernandez, in her official and individual capacity, and Lund, in his official and individual capacity, as follows:

1. Award Plaintiff actual damages including back-pay and compensatory damages for Defendants' violations of the Missouri Human Rights Act, including an amount equal to her lost wages and other benefits of employment, with interest, and any other expenses incurred as a result of her loss of these benefits.

2. Award Plaintiff damages for emotional distress;

3. Award Plaintiff punitive damages, up to and including $1,000,000.00, for Defendants' intentional and malicious violation of Plaintiff's rights;

4. Award Plaintiff reasonable attorney's fees and costs incurred herein;

5. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

### COUNT III
### DISCRIMINATION ON THE BASIS OF DISABILTY IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

74. Plaintiff does hereby incorporate by reference each and every allegation contained in paragraphs 1-79, as if fully set forth herein.

75. Plaintiff's disability and/or perceived disability, was a contributing factor in Defendants' decision to take the aforementioned adverse employment actions against her.

76. At all times relevant herein, Plaintiff could perform the essential functions of her job, with reasonable accommodation.

77. Plaintiff repeatedly requested a reasonable accommodation for her medical condition (s), but US Airways refused to engage in any meaningful way in the interactive process.

78. All actions taken against Plaintiff by Defendants herein aforementioned, qualify as adverse employment actions taken in violation of the MHRA, and such adverse employment actions were of a continuing nature, ultimately culminating in her constructive discharge. The aforementioned adverse employment actions taken against Plaintiff were part of a pattern, practice, and policy of the Defendants.

79. The aforementioned adverse employment actions taken by Defendants against Plaintiff, including but not limited to her constructive discharge, were initiated intentionally, knowingly, maliciously, and in willful and wanton disregard and reckless indifference to Plaintiff's rights all in violation of the Missouri Human Rights Act.

80. As a direct result of Defendants' unlawful acts, as aforesaid, in violation of the MHRA, Plaintiff has lost wages, benefits, and suffered severe and debilitating emotional distress, including physical manifestations of stress.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in her favor, above the $25,000.00 jurisdictional requirement of this Court, against Defendants US Airways, Hernandez, in her official and individual capacity, and Lund, in his official and individual capacity, as follows:

1. Award Plaintiff actual damages including back-pay and compensatory damages for Defendants' violations of the Missouri Human Rights Act, including an amount equal to her

lost wages and other benefits of employment, with interest, and any other expenses incurred as a result of her loss of these benefits.

2. Award Plaintiff damages for emotional distress;

3. Award Plaintiff punitive damages, up to and including $1,000,000.00, for Defendants' intentional and malicious violation of Plaintiff's rights;

4. Award Plaintiff reasonable attorney's fees and costs incurred herein;

5. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

## COUNT III
## RETALIATION FOR REPORTING DISABILITY AND/OR PERCEIVED DISABILITY DISCRIMINATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

81. Plaintiff does hereby incorporate by reference each and every allegation set forth in Paragraphs 1-80, as if fully set forth herein.

82. All aforementioned actions against Plaintiff herein mentioned, qualify as adverse employment actions taken in violation of the MHRA. The aforementioned adverse employment actions taken against Plaintiff were part of a pattern, practice, and policy of all Defendants.

83. Defendants' conduct was initiated intentionally, knowingly, maliciously, in willful and wanton disregard and reckless indifference to Plaintiffs' rights in violation of the MHRA.

84. As a direct result of Defendants' unlawful acts, as aforesaid, in violation of the MHRA, Plaintiff has lost wages, benefits, and suffered severe and debilitating emotional distress, including physical manifestations of stress.

85. Plaintiff's reporting of disability and/or perceived disability discrimination was a

16

contributing factor in Defendants' decision to take the aforementioned adverse employment actions.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in her favor, above the $25,000.00 jurisdictional requirement of this Court, against Defendants US Airways, Hernandez, in her official and individual capacity, and Lund, in his official and individual capacity, as follows:

1. Award Plaintiff actual damages including back-pay and compensatory damages for Defendants' violations of the Missouri Human Rights Act, including an amount equal to her lost wages and other benefits of employment, with interest, and any other expenses incurred as a result of her loss of these benefits.

2. Award Plaintiff damages for emotional distress;

3. Award Plaintiff punitive damages, up to and including $1,000,000.00, for Defendants' intentional and malicious violation of Plaintiff's rights;

4. Award Plaintiff reasonable attorney's fees and costs incurred herein;

5. Grant Plaintiff such other and further legal relief as the Court deems just and proper under the facts and circumstances of this case.

Electronically Filed - St Louis County - October 16, 2014 - 03:35 PM

Respectfully Submitted,

LAW OFFICES OF RICK BARRY, P.C.

By: _____
RICK BARRY, MBE # 25592
MEGEN L. HOFFMAN, MBE #58772
Attorneys for Plaintiff
1034 South Brentwood Blvd., Suite 1301
St. Louis, MO 63117
Phone: (314)918-8900
Fax: (314)918-8901
rickbarry@rickbarrypc.com
megens@rickbarrypc.com